DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Steven Ray Murphy, | ) | |
| | ) | CASE NO. 5:10 CV 2095 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| Ryan Koster, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Pro se* plaintiff Steven Ray Murphy filed this action under 42 U.S.C. §§ 1983 and 1985 against Wayne County Deputy Sheriff Rayn Koster, Wayne County Deputy Sheriff Paul Brumme, Wayne County Municipal Court Judge William Rickett, Wooster Police Officer Brandon Lash, Gimpsy's Towing Driver Taulbe Flory, Creston Chief of Police Phil Carr, Wayne County Deputy Sheriff James Henry, Wayne County Municipal Court Judge Carol Milhoun, Wayne County Public Defender Beverly Wire, Wayne County Municipal Court Prosecutor Douglas Dumoult, Wayne County Municipal Court Bailiff Dennis Felter, Wayne County Home Arrest Department Supervisor Michelle Holbert, Creston Police Officer Ed Hamilton, Wayne County Municipal Court Prosecutor Jodie Schumacher, Wayne County Deputy Sheriff Jason Crawford, Wayne County Sheriff Thomas Maurer, Wayne County Municipal Court Clerk of Court Tim Neel, and Wayne County Municipal Court Prosecutor Martin Frantz. In the Complaint, Plaintiff alleges his constitutional rights were violated during several prosecutions for traffic offenses and a dispute with his neighbors. He seeks monetary damages, and expungement of his record.

(5:10 CV 2095)

On October 21, 2010, this Court issued an Order notifying Mr. Murphy that his Complaint may be subject to dismissal for failure to state a claim upon which relief may be granted. He was ordered to amend his Complaint to set forth a cognizable claim for relief within thirty days from the date of the Order. He was notified that if a legally sufficient amended Complaint was not filed within the time permitted, this action would be dismissed. *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir.1998) (overruled on other grounds as stated in *Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir.2006)); *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983). Mr. Murphy filed an amended Complaint on November 19, 2010. It is not clear whether he intended this pleading to fully replace his original Complaint or to supplement it. The Court will therefore liberally construe it as a supplement to the original Complaint.

## I. **Background**

Mr. Murphy was stopped by a Wayne County Deputy Sheriff on September 24, 2008. He was cited for speeding and driving without an operator's license. He entered a plea of "not guilty" and received a trial date of October 27, 2008. Mr. Murphy, however, failed to appear in court for the trial, and a warrant was issued for his arrest. *See State of Ohio v. Murphy*, Case No. TRD-08-09-10965 (Wayne Cnty Mun.Ct. filed Sept. 29, 2008). He was taken into custody on the outstanding warrant on April 16, 2009 by Deputies Koster and Brumme. He appeared in court, and was given a new trial date on May 11, 2009. On the date of the trial, the officer who issued the citation did not appear and the charges against Mr. Murphy were dismissed.

Mr. Murphy was stopped by Creston Police Officer Ed Hamilton on May 18, 2009 and charged with a head light infraction and driving without an operator's license. He contends

2

(5:10 CV 2095)

Officer Hamilton searched his truck, and then summoned Taulbe Flory of Gimpsy's Towing to impound the car.  A hearing on these citations was set for June 2, 2009.

The day after receiving these citations, Mr. Murphy went to Gimpsy's Towing and attempted to take his truck.  Taulbe Flory telephoned police.  Chief Carr arrived and ordered Mr. Murphy to leave the premises.  When Mr. Murphy did not comply, he was arrested and charged with criminal trespass.  A hearing on those charges was set for May 27, 2009.  Mr. Murphy did not understand he was required to attend court on both May 27, 2009 and June 2, 2009.  He therefore did not appear for court on May 27, 2009, and a warrant was issued for his arrest.  When Mr. Murphy appeared in court on June 2, 2009, he was taken into custody on the outstanding warrant.  Both cases were heard at the same time.  Mr. Murphy entered a plea of not guilty to all charges.  Trial in both matters was set for July 15, 2009, but was continued to August 26, 2009.  A bench trial was held on that date.        During a lunch break from the trial, Officer Lash stopped Mr. Murphy in the parking lot of the municipal building and issued a citation  for operating a motor vehicle without a license and not wearing a seat belt.  When Officer Lash returned to his cruiser to write the citation, Mr. Murphy exited his vehicle and began to walk into the court house.  Officer Lash ordered him to stop and return to his truck.  Mr. Murphy continued to walk toward the courthouse telling the officer he was late for court.  Officer Lash grabbed Mr. Murphy and arrested him for disorderly conduct.  He was scheduled to appear in court on these charges on September 8, 2009.

After his lunch time arrest, Mr. Murphy's trial continued.  He was convicted on all charges.  He was given a fine and ordered to serve thirty days in jail.  His incarceration was

3

(5:10 CV 2095)

stayed for 14 days to allow for the probation department to conduct a home detention screening. He claims Michelle Holbert reported to the court that home detention was not appropriate for Mr. Murphy and a warrant was issued for his arrest.

Mr. Murphy appeared in court on September 8, 2009 for the arraignment on the disorderly conduct, operating a motor vehicle without a license and seat belt violation charges. He entered a plea of "not guilty." After entering his plea and receiving his next court date, he went to the Clerk's office to file a Notice of Appeal and a Motion to Stay the Execution of his Sentence for his August 2009 conviction. Judge Milhoun granted his Motion to Stay his Sentence during his appeal but required him to post a $1,000 bond. He contends Bailiff Dennis Felter handed the Judge's Order to him and told him if he did not have the money to post a bond, he would be taken into custody on the arrest warrant. Mr. Murphy claims there was already a deputy behind the counter waiting for him. He had not come prepared to post a $1,000 bond, so he was arrested. He contends he spent sixteen hours in jail.

Mr. Murphy went to trial on the traffic citation and disorderly conduct charges on December 14, 2009. He was found guilty of operating a motor vehicle without a license, and a seat belt violation. A fine was imposed against him. The Judge also modified his sentence in his previous conviction from incarceration to a fine. Mr. Murphy was released.

In addition Mr. Murphy also complains of difficulties he has had with his neighbors. The Sheriff's Department was summoned to Mr. Murphy's house in May 2010 because the neighbor's dog killed Mr. Murphy's dog. Mr. Murphy contends Deputy Crawford would not

4

(5:10 CV 2095)

take a vicious dog report unless Mr. Murphy gave the officer his social security number.  He refused and the report was not submitted.

    Mr. Murphy lists a number of causes of action.  He alleges Deputy Koster, Deputy Brumme, Deputy Henry, Officer Lash, Chief Carr, and Bailiff Dennis Felter unlawfully arrested him.  He claims Koster, Brumme, Henry and Felter were executing arrest warrants which he contends were also unlawful.  He states he was not advised of his rights under Miranda by Officer Hamilton, Chief Carr, or Dennis Felter.  He claims Officer Hamilton conducted an unlawful search of his truck.  He claims Deputies Koster and Brumme, and Prosecuting Attorney Douglas Dumoult violated his right to travel and his "right to impunity." (Compl. at 3.)  Mr. Murphy claims Sheriff Maurer did not stop his deputies from committing these actions.  He contends Judge Rickett denied him a speedy trial, denied various motions, assumed jurisdiction of his case, and sentenced him to jail, probation and fines.  He claims Judge Millhoun made decisions in his case with which he did not agree and signed a warrant for his arrest.  He asserts Officer Lash conspired with others to have him arrested, while Mr. Flory and Chief Carr conspired to seize his vehicle.  He contends Prosecutors Schumacher, Dumoult, and Frantz should have dismissed the charges against him, and used an expired contract from the Bureau of Motor Vehicles to prove he was driving without a license.  He alleges Beverly Wire filed Motions on his behalf when he wanted to represent himself.  He states the Clerk of Courts did not recognize his UCC paperwork without prejudice.  Finally, Mr Murphy contends Deputy Crawford denied him due process when he would not take a report of a vicious dog.  He

5

(5:10 CV 2095)

contends the Deputy also violated his right to privacy by demanding his social security number. He seeks monetary damages, and the issuance of writs of mandamus and quo warranto.

## II.  Analysis

While *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court may dismiss an action *sua sponte* if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(*citing Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). The claims asserted in this action satisfy these criteria.

### A.  Private Parties

As an initial matter, Mr. Murphy brings this action against individuals who are not subject to suits for damages under 42 U.S.C. § 1983.  To establish a prima facie case under 42 U.S.C. §1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee.  Taulbe Flory appears to be a private citizen employed by a towing company.  A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  An individual may also be considered a state

6

(5:10 CV 2095)

actor if he or she exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). There are no allegations in the Complaint which reasonably indicate that Mr. Flory can be considered a government employee.

Public Defenders also are not generally considered to be state actors. They do not "act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). A public defender is a not state actor merely because he or she is an employee of the state. *Id*. at 319-22. Moreover, our adversarial system of justice and a lawyer's ethical duties to a client lead to the conclusion that a public defender is not an instrument of the state, but rather an independent advocate for the client's interests. *Id*. Wayne County Public Defender Beverly Wire was appointed on July 9, 2009 as Mr. Murphy's "stand by" counsel when he requested permission to represent himself during one of his criminal trials. She filed a Motion on his behalf, with which Mr. Murphy took issue. Ms. Wire withdrew from his case on July 14, 2009. The allegations against her do not suggest she was a state actor.

### B. Immunity

Furthermore, six of the Defendants are immune from damages in this action. Wayne County Municipal Court Judges William Rickett, and Carol Millhoun are absolutely immune from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. *Barnes*, 105 F.3d at 1115. For this reason, absolute immunity

7

(5:10 CV 2095)

is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116.  *Stump*, 435 U.S. at 356-57.  A judge will not be deprived of immunity even if the action he or she took was performed in error, done maliciously, or was in excess of his or her authority.  Mr. Murphy contends that Judge Rickett and Judge Millhoun issued orders which he believes to be contrary to state or federal law.  If these allegations are true, Mr. Murphy's remedy is an appeal of his convictions.  He does not have recourse against these judges for damages under 42 U.S.C. §1983.

Similarly, prosecutors are also entitled to absolute immunity from damages for initiating a prosecution and in presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993).  A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in conducting them in court. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).  This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages.  *Id.*  Absolute immunity is therefore extended to prosecuting attorneys when the actions in question are those of an advocate." *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003).  Immunity is granted not only for actions directly related to initiating a prosecution and presenting the State's case, but also to activities undertaken "in connection with [the] duties in functioning as a prosecutor." *Id.* at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). The immunity also reaches beyond the

8

(5:10 CV 2095)

criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating ... judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir.2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990).  In this instance, the challenged actions of Wayne County Prosecutors Douglas Dumoult, Jodie Schumacher, and Martin Frantz were all intimately associated with the judicial phase of Mr.Murphy's prosecutions.  Consequently, these defendants are entitled to absolute immunity.

Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process. *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988).  Whether an act is judicial in character does not depend on whether it is discretionary. *Id.*  Rather, immunity applies to all acts of auxiliary court personnel that are "basic and integral parts of the judicial function," unless those acts are done in the clear absence of all subject matter jurisdiction of the court. *Mullis v. U.S. Bankruptcy Court, Dist of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987).  Acts committed in error or in excess of jurisdiction will not abrogate immunity, even if it results in "grave procedural errors." *Id.*  Mr. Murphy claims Tim Neel refused to recognize his UCC filing without prejudice in his criminal cases.  Refusing to accept or recognize documents for filing is an integral part of the judicial process and within the subject matter jurisdiction of their courts. *Sindram v. Suda*, 986 F.2d

(5:10 CV 2095)

1459, 1461 (D.C. Cir. 1993)(citing the Sixth Circuit's decision in *Foster*).[1] Mr. Neel is entitled to absolute immunity.

### C. Respondeat Superior

Mr. Murphy names Wayne County Clerk of Court Tim Neel and Wayne County Prosecutor Martin Frantz as defendants because he claims they were "in the position of power to stop these unjust acts, and both of these public officials failed to stop it." (Compl. at 24.) He claims Wayne County Sheriff Thomas Maurer would not return his telephone calls or answer his letters. Supervisors cannot be held liable under § 1983 where the allegation of liability is based upon a mere failure to act. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)). Rather, the supervisors must have actively engaged in unconstitutional behavior. *Bass*, 167 F.3d at 1048. Liability, therefore, must lie upon more than a mere right to control employees and cannot rely on simple negligence. *Id.* In order for liability to attach to the Clerk of Court or the Prosecutor, Plaintiff must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the other defendants' actions. *Id*. Plaintiff must show that the supervisors somehow encouraged or

---

[1] *See Fish v. Murphy*, No. 01-3601, 2001WL 1355611(6th Cir. Oct. 26, 2001)(finding the clerk of court was entitled to absolute immunity even though he stamped the wrong date on the document which resulted in the dismissal of an appeal); *Harris v. Suter*, No. 00-3309, 2001 WL 111586 (6th Cir. Feb. 1, 2001)(holding clerk was entitled to absolute immunity for actions associated with filing or failing to file a document); *Burton v. Mortimer*, No. 99-1956, 2000 WL 876517 (6th Cir. June 22, 2000)(finding the denial of free copies of the file and a delay in forwarding the record to the state court of appeals which results in an erroneous dismissal for lack of jurisdiction and are both quasi-judicial functions which entitle the clerk to absolute immunity); *see also Foster*, 864 F.2d at 417 (the act of issuing an order of a judge is a quasi-judicial function entitled to immunity).

(5:10 CV 2095)

condoned the actions of their inferiors.  *Id.*; *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995).  There are no allegations in the Complaint suggesting Tim Neel or Martin Frantz was personally involved in any of the activities described.

### D. Right to Travel

Mr. Murphy first claims the Defendants interfered with his right to travel by continually issuing traffic citations for driving without a license and impounding his vehicle.  It is evident that Mr. Murphy is confusing the constitutional right to travel with the qualified privilege to drive an automobile.  *See Duncan v. Cone*, No. 00-5705, 2000 WL 1828089 at * 2 (6th Cir. Dec. 7, 2000)(*citing Miller v. Reed*, 176 F.3d 1202, 1205-06 (9th Cir. 1999).  Restrictions placed on a single mode of transportation do not rise to the level of a violation of the fundamental right to interstate travel.  *Id.*

### E. Right to Impunity

In addition, Mr. Murphy claims the Defendants violated his "right to impunity."  (Compl. at 3.)  No right to impunity is found in the Constitution and Mr. Murphy does not point to any statute or case which confers this right upon him.  He mentions the Uniform Commercial Code (UCC).  It is not clear whether he believes the right to impunity arises from this legislation.  The UCC, however, governs commercial transactions.  It does not provide substantive rights in a criminal action.

### F. Fourth Amendment

Mr. Murphy also includes claims for unreasonable searches and seizures.  The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and

11

(5:10 CV 2095)

effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Seizure alone is not enough for §1983 liability.  *Pleasant v. Zamieski*,  895 F.2d 272, 277 (6th Cir. 1990). To state a claim for violation of the Fourth Amendment under §1983, the seizure must be unreasonable.  A seizure is reasonable if there is probable cause for the arrest, and the circumstances surrounding the arrest are reasonable.  *See United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985); *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir.2004).  To determine if there was probable cause necessary to justify an arrest, the Court considers "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir.2005).

Mr. Murphy contests multiple arrests.  The arrests made by Deputy Koster, Deputy Brumme Deputy Henry and Bailiff Dennis Felter were in execution of a warrant for Mr. Murphy's arrest.  As a general matter, a seizure "accomplished pursuant to a judicial warrant issued upon probable cause" is reasonable.  *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989).  There are no facts in the Complaint which would call these arrests into question.  In addition, Officer Lash arrested Mr. Murphy in the parking lot of the courthouse for driving without a license.  At the time of the arrest, Mr. Murphy was on trial for driving without a license.  On a separate occasion, Chief Carr arrested Mr. Murphy for trespass when he refused to leave the towing company.  In both of those instances, there is no suggestion that the officers observing the infractions were unreasonable in concluding that an offense was committed.

(5:10 CV 2095)

Moreover, Mr. Murphy was convicted of these offenses.  A person convicted of an offense may not raise claims under 42 U.S.C. § 1983 if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside.  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  The holding in *Heck* applies whether plaintiff seeks injunctive, declaratory or monetary relief.  *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401 at *1 (6th Cir. May 5, 1998).  Mr. Murphy's allegations would call into question the validity of his convictions.  Consequently, he must also  allege his convictions have been declared invalid by either an Ohio state court or a federal habeas corpus decision.  He has not included these allegations and his claims must therefore be dismissed.

Mr. Murphy further alleges Officer Hamilton conducted an unreasonable search of his truck.  There are no allegations to explain or support this claim.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Rule 8 does not require the plaintiff to provide detailed factual allegations, but it does demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard  *Id.*  This claim is stated only as a legal conclusion, which does not meet the pleading standard of Rule 8.

13

(5:10 CV 2095)

### G. Miranda Rights

Mr. Murphy also claims the arresting officers did not advise him of his constitutional rights as set forth in *Miranda v. Arizona,* 384 U.S. 436 (1966). The *Miranda* exclusionary rule is a prophylactic measure to prevent violations of the right protected by the text of the Self-Incrimination Clause of the Fifth Amendment. *Chavez v. Martinez*, 538 U.S. 760, 772-773 (2003). It is designed to safeguard a constitutional right; however, it does not extend the scope of the constitutional right itself. *Chavez*, 538 U.S. at 772; *McKinley v. City of Mansfield*, 404 F.3d 418, 432 n.13 (6th Cir. 2005). Therefore, the officers' failure to read Miranda warnings to Mr. Murphy did not violate his constitutional rights and cannot be grounds for a § 1983 action. *Chavez*, 538 U.S. at 772.

### H. Due Process

Mr. Murphy claims Officer Crawford violated his right to due process by not taking a vicious dog report against his neighbor. As the first step in any due process inquiry, Mr. Murphy must show he has a protected property interest in having criminal citations filed against his neighbor. To have a property interest, a person clearly must have more than an abstract need or desire for it, and more than a unilateral expectation of it. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). He must, instead, have a legitimate claim of entitlement to it. *Id.* The benefit that a third party may receive from having someone else cited for a criminal offense generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its "substantive" manifestations. *Parratt v. Taylor*, 451 U.S. 527, 544 (1981).

(5:10 CV 2095)

The decision to decline to take a report and process charges did not violate Mr. Murphy's Fourteenth Amendment rights.

### I. 42 U.S.C. §1985

Finally, Mr. Murphy asserts a conspiracy claim against Taulbe Flory and Chief Carr under 42 U.S.C. §1985. To state a claim for conspiracy to deprive a person of equal protection under the law pursuant to 42 U.S.C. § 1985 , a plaintiff must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of plaintiff or deprivation of any right or privilege of a citizen of the United States. *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir.2003) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 828-29 (1983)). The acts that allegedly deprived the plaintiff of equal protection must be the result of class-based discrimination. *Id.* (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992)). While Mr. Murphy alleges these defendants conspired to tow his truck, he does not allege any facts to suggest that they acted with the purpose of depriving him of equal protection of the law based on his membership in a protected class. He therefore fails to state a claim for relief under §1985.

(5:10 CV 2095)

### III. Conclusion

For all the foregoing reasons, this action is dismissed. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

The Clerk is directed to mail a copy of this Memorandum Opinion to the plaintiff at his address of record.

IT IS SO ORDERED.

| | |
|---|---|
|  December 13, 2010 | *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

---

[2] 28 U.S.C. § 1915(a)(3) provides, in pertinent part:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.